UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUI LUO,<br><br>                              Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center, et al.,<br><br>                              Respondents. | Case No.:  25cv3848-LL-VET<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>**[ECF No. 1]** |

Before the Court is Petitioner Rui Luo's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Respondents filed a Return [ECF No. 4], and Petitioner filed a Traverse [ECF No. 5]. For the reasons set forth below, the Court **GRANTS IN PART** the Petition.

I.    BACKGROUND

Petitioner is a citizen of China who entered the United States on May 15, 2022, seeking asylum after facing persecution for practicing her religion. Pet. ¶¶ 1, 24. Petitioner was initially detained, but then immigration agents released her on humanitarian parole with reporting requirements on June 5, 2022. *Id.* ¶ 1. Respondents found that she was not a flight risk or danger to the community at the time of her release. *Id.* ¶ 25. Petitioner states that for over three years, she complied with immigration-related reporting requirements, pursued affirmative asylum, and obtained work authorization. *Id.* ¶ 1. Petitioner states that "suddenly, without explanation or good cause," Respondents re-detained her on October 9, 2025. *Id.* Petitioner was re-detained at the San Diego field office when she appeared for

her parole reporting requirements and has since been detained at Otay Mesa Detention Facility. *Id.* ¶¶ 1, 2. Petitioner did not receive a pre-deprivation hearing before her re-detention. *Id.* On October 28, 2025, Respondents gave Petitioner a Notice to Appear placing her in removal proceedings in San Diego. *Id.* ¶ 2. Since her detention, Petitioner has been denied an opportunity to apply for bond. *Id.* Petitioner is married to a U.S. citizen and is eligible to seek to adjust her status to lawful permanent residency in the U.S. based on her marriage. *Id.* ¶ 24.

On December 31, 2025, Petitioner filed the instant Petition, alleging that her re-detention without notice and a hearing violates the Fifth Amendment's Due Process Clause and the Administrative Procedure Act, and that she is wrongfully detained under 8 U.S.C. § 1225(b)(2) in violation of the Immigration and Nationality Act. *Id.* ¶¶ 62-74. Accordingly, Petitioner seeks a writ of habeas corpus directing Respondents to release her from custody under the same conditions as her initial release. *Id.* ¶ 2. Petitioner also seeks an order prohibiting Respondents from subjecting Petitioner to the Alternatives to Detention Program, including an ankle monitor or other monitoring devices, and attorneys' fees under the Equal Access to Justice Act. *Id.* at 29-30.

On January 16, 2026, Respondents filed a Response acknowledging that (1) DHS instituted a notice on July 8, 2025 requiring that "anyone arrested in the United States and charged with being inadmissible to be considered an 'applicant for admission' under 8 U.S.C. § 1225(b)(2)(A), subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and not subject to detention under 8 U.S.C. § 1226(a)"; (2) in the class action *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), the district court declared the DHS notice unlawful under the Administrative Procedures Act; (3) a final judgment was entered in *Maldonado Bautista* on December 18, 2025; and (4) therefore, Petitioner is detained under 8 U.S.C. § 1226(a) and entitled to an order from this Court directing a bond hearing pursuant to 8 U.S.C. § 1226(a). ECF No. 4; *see also Maldonado Bautista v. Noem*,

No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025) (entering final judgment for members of the Bond Eligible Class).

On January 22, 2026, Petitioner filed a Traverse arguing that "Respondents did not respond to Petitioner's claim that Respondents violated her fifth amendment right to due process when they re-detained her on October 9, 2025, without any explanation or change in circumstance." ECF No. 5 at 2. Accordingly, Petitioner states that her initial Petition establishes that Respondents violated her Fifth Amendment right to due process, and requests that the Court order her immediate release. *Id*.

## II. LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## III. DISCUSSION

Petitioner argues that the summary revocation of her parole without notice or a hearing violates the Due Process Clause and the Administrative Procedure Act, and that she is wrongfully detained under 8 U.S.C. § 1225(b)(2) in violation of the Immigration and Nationality Act. Pet. ¶¶ 62-74. Respondents do not directly address Petitioner's claims, instead conceding that in light of *Maldonado Bautista*, Petitioner is detained under 8 U.S.C. § 1226(a) and entitled to a bond hearing. ECF No. 4.

### A. Detention Statute

The Courts finds—independent of *Maldonado Bautista*—Petitioner was wrongfully detained under 8 U.S.C. § 1225(b). As a noncitizen who, at the time of her detention, had been present in the United States for over three years on conditional parole while she sought

asylum, Petitioner was and is subject to 8 U.S.C. § 1226(a), which states that a noncitizen "may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). By contrast, 8 U.S.C § 1225(b) applies to noncitizens arriving at the border or who very recently entered the United States. *See Beltran v. Noem*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at *4–7 (S.D. Cal. Nov. 4, 2025). As the Supreme Court explained, the government may "detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," while § 1226(a) allows the government to "detain certain aliens *already in the county* pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (emphasis added).

### B.    Due Process Clause

The Fifth Amendment guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause generally "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

The Court finds that having been previously released on parole on June 5, 2022, Petitioner had a protected liberty interest in remaining free from detention. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)) (alterations in original).

1        As Petitioner has a protected liberty interest, the Due Process Clause requires
2   procedural protections before he can be deprived of that interest. *See Mathews v. Eldridge*,
3   424 U.S. 319, 334–35 (1976). To determine which procedures are constitutionally
4   sufficient to satisfy the Due Process Clause, the Court considers the following factors:
5   (1) "the private interest that will be affected by the official action"; (2) "the risk of an
6   erroneous deprivation of such interest through the procedures used, and the probable value,
7   if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's
8   interest, including the function involved and the fiscal and administrative burdens that the
9   additional or substitute procedural requirement would entail." *Id.* at 335.

10       The Court finds that all three factors support a finding that the government's
11  revocation of Petitioner's parole without notification, reasoning, or an opportunity to be
12  heard, denied Petitioner of her due process rights. First, as discussed above, Petitioner has
13  a significant liberty interest in remaining out of custody pursuant to her parole. *See Pinchi*,
14  792 F. Supp. 3d at 1032 ("Thus, even when ICE has the initial discretion to detain or release
15  a noncitizen pending removal proceedings, after that individual is released from custody
16  she has a protected liberty interest in remaining out of custody." (citations omitted)).
17  Freedom from detention is a fundamental part of due process protection. *See Hernandez v.
18  Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("[F]reedom from imprisonment is at the 'core
19  of the liberty protected by the Due Process Clause.'" (quoting *Foucha v. Louisiana*,
20  504 U.S. 71, 80 (1992))).

21       Second, the risk of an erroneous deprivation of such interest is high as Petitioner's
22  parole was revoked without providing her a reason for revocation or giving her an
23  opportunity to be heard. Since the initial determination that Petitioner should be paroled
24  because she posed no danger to the community and was not a flight risk, there is no
25  evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168,
26  1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th
27  Cir. 2018) ("Release reflects a determination by the government that the noncitizen is not
28  a danger to the community or a flight risk."). Petitioner has no criminal record, and there

is no indication that she has failed to abide by the conditions of her release. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings." *Id.* "Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk . . . ." *Id.* The risk of erroneous deprivation of Petitioner's liberty is high because neither the government nor Petitioner has had an opportunity to determine whether there is any valid basis for her detention. *Pinchi*, 792 F. Supp. 3d at 1035 (citation omitted). It follows that the probable value of additional procedural safeguards, such as notice and a pre-deprivation hearing, is also high.

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. *See Pinchi*, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."); *Matute*, 2025 WL 2817795, at *6; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."). There is no indication that providing proper notice, reasoning, and a pre-deprivation hearing would be fiscally or administratively burdensome on the government.

Therefore, because Respondents detained Petitioner by revoking her parole without notice or a pre-deprivation hearing in violation of the Due Process Clause, her detention is unlawful. *See, e.g.*, *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629, at *4 (S.D. Cal. Sept. 26, 2025) (finding the petitioner's parole was revoked without notice and a hearing and without a showing of a change of circumstances, thus violating her due process rights and rendering her detention unlawful).[1] The proper remedy for the unlawful

---

[1] The Court need not address Petitioner's claim arising under the APA because the Petition can be resolved on due process grounds. However, the Court notes that other courts have

detention is Petitioner's immediate release subject only to the conditions of her preexisting parole. *See Noori*, 2025 WL 2800149, at *1 (finding DHS violated the petitioner's due process rights by revoking his parole without notice or a hearing and ordering his immediate release); *Sanchez*, 2025 WL 2770629, at *5 (same); *Ortega*, 415 F. Supp. 3d at 970 (ordering immediate release after the petitioner was detained while out on bond without notice or pre-deprivation hearing).

Accordingly, the Court **GRANTS IN PART** Petitioner's Petition.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS IN PART** Petitioner's Petition for Writ of Habeas Corpus [ECF No. 1] and **ORDERS** as follows:

1. Respondents shall immediately release Petitioner from custody subject only to the conditions of her preexisting parole.

3. Prior to any re-detention of Petitioner, she is entitled to notice of the reasons for revocation of her parole and a pre-deprivation hearing before a neutral immigration judge to determine whether detention is warranted. At such a hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. *See Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *14 (E.D. Cal. Aug. 28, 2025) (finding that the petitioner's initial release "reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk" and so if the government initiates re-detention, "it follows that the government should be required to bear the burden of providing a justification for the re-detention"); *Pinchi*, 792 F. Supp. 3d

---

found violations of the APA in similar circumstances. *See, e.g.*, *Noori*, 2025 WL 2800149, at *3, 13 ("Petitioner's parole was revoked without an individualized determination or provided reasoning, which violated the APA."); *Sanchez*, 2025 WL 2770629, at *4 (finding revocation of the petitioner's parole arbitrary and capricious because respondents did not state any reasons for the revocation).

at 1038 (ordering that before the petitioner can be re-detained, she must be provided with a pre-detention bond hearing before a neutral immigration judge and that she may not be detained "unless the government demonstrates at such a bond hearing, by clear and convincing evidence, that she is a flight risk or a danger to the community and that no conditions other than her detention would be sufficient to prevent such harms").

4. The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated: January 27, 2026

Honorable Linda Lopez
United States District Judge